UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SHAQUEL VAUGHAN,
    Petitioner/Movant,

-v-

UNITED STATES OF AMERICA,
    Respondent.

Case No. 7:22-cr-00452-CS

RECEIVED
JUL 0 1 2024
U.S.D.C.
W.P.

MOTION FOR REDUCTION
OF SENTENCE UNDER
18 U.S.C. SECTION 3582(c)(2)

Comes now, the Movant, Shaquel Vaughan ("Mr. Vaughan"), acting in a pro se capacity and respectfully Moves for a reduction of sentence under 18 U.S.C. Section 3582(c)(2), based on the following:

I. FACTUAL AND PROCEDURAL HISTORY OF AMENDMENT 821

On April 29, 2023, the sentencing Commission sent to Congress the Federal Sentencing Guidelines ("the guidelines"), including several changes to the way criminal history is calculated in chapter 4 of the guidelines. Accumulating criminal history points can increase one's guideline range and effect the ultimate sentence. Two changes lower the criminal scores starting on November 1, 2023. The Commission voted on August 24, 2023 to make those changes retroactive. The changes permitted inmates to seek reductions which average 14 months or more. The Commission voted to amend the Criminal History guideline to eliminate the two-point addition of those serving any form of a criminal justice sentence. Zero point offenders "Zero-point offenders" is the term given to defendants who have no criminal history points.[1]

According to the Commission's data, people with no criminal history points are at much lower risk of recidivating than people who have only one criminal history point. Yet, defendant's with no criminal history are treated in the same way as those with one criminal history point for the purpose of calculating their guideline range. With this difference in mind, the amended Criminal History guideline now provides a two-level decrease for some defendants with zero points. Judges will be able to reduce the sentencing range by two levels if the defendant meets the following list of criteria. The defendant did not: (1) receive any criminal history points; (2) receive a terrorism adjustment; (3) use violence or credible threats of violence in connection with the offense; (4) posses, receive, or otherwise handle a firearm or other dangerous weapon; (5) personally cause financial hardship; (6) receive a hate crime, vulnerable victim, or serious human right offense adjustment; (7) receive an aggravating role adjustment; (8) engage in a continuing criminal enterprise. In addition, the instant offense cannot have resulted in death or serious bodily injury; was not a sex offense; and not an offense involving individual rights. For people who receive a two-level reduction and whose offense level is not higher than 11, the amendment counsels courts to consider a sentence other than imprisonment.

If an individual receives the two-level reduction but has an offense level higher than 11 and that offense level, in the court's judgment, overstates the gravity of the offense, the court might also consider a departure to a sentence other than imprisonment.

---

1 Mr. Vaughan's Guildeline range according to both the plea agreement and Presentence Report is 210-262 months with a offense level 37 and a criminal history category of I. The Court may consider an appropriate variance in light of the new Guideline Amendment which would reduce Mr. Vaughan's offense level to 35 and thus trigger a range of 168-210 months.

2

The Commission has found that status points and first offender status are dispropportinately assessed on people of color. Demographic data on incarcerated people who would be eligible for status point retroactively reveal that 43 percent are black and almost 28 percent are Hispanic.

## II. JURISDICTION

The jurisdiction basis for this Motion is 18 U.S.C. Section 3582(c) and U.S.S.G 1B1.10. There are two components to receiving a sentence reduction pursuant to 3582(c). First, the Movant has to provide that he or she is not ineligible as set forth above. Second, the court has discretion whether to reduce the Movant's sentence.

## III. LEGAL ANALYSIS

The Zero-point offender amendment (Part A) requires Mr. Vaughan to meet the 10 criteria listed in the new U.S.S.G. 4C1.1 as follows:

1. No criminal history points. Mr. Vaughan does not have criminal history points.[2]

2. No adjustment under 3A1.4 (terrorism). Mr. Vaughan does not have an adjustment under 3A1.4.

3. No use of credible threats of violence in connection with the offense. Mr. Vaughan did not use credible threats of violence in connection with his offense.

4. The offense did not result in the death or serious bodily injury. Mr. Vaughan does not have an offense that resulted in death or in serious bodily injury.

5. The offense is not a sex offense. Mr. Vaughan does not have a sex offense.

---

[2] Mr. Vaughan is a 26-year-old black man with zero criminal history points. Moreover, Mr. Vaughan has potential given his high school diploma (Professional Pathways High School in Brooklyn), his computer skills, his creative writing and musical talents.

3

6. The defendant did not cause personal financial injury and hardship. Mr. Vaughan did not personally cause substantial financial injury.

7. The defendant did not possess, receive purchase transport, transfer, sell or dispense a firearm or other dangerous weapons in connection with the offense. Mr. Vaughan did not personally possess a firearm.[3]

8. The instant offense is not covered under 2H1.1 (offenses involving individual rights). Mr. Vaughan does not have an offense covered under 2H1.1.

9. The defendant did not receive an adjustment under 3A1.1 (hate crime motivation or vulnerable victim) or 3A1.5 (serious human rights offense). Mr. Vaughan did not receive an adjustment under 3A1.1 or 3A1.5.

10. The defendant did not receive an adjustment for an aggravating role (3B1.1) and was not engaged in a continuing criminal enterprise under 484. Mr. Vaughan did not receive an adjustment for an aggravating role (3B1.1) and was not engaged in a continuing criminal enterprise under 484.

## IV. 18 U.S.C. SECTION 3552(A) FACTORS

The factors set forth in 18 U.S.C. Section 3553(a) which include "the nature and circumstances of the offense, the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." Id. Section 3553(a)(1), (a)(2)(c) -- Counsel in favor of a reduction in sentence. Mr. Vaughan acknowledges his offense conduct was serious, but; has made great efforts towards his rehabilitation and is proud to report to this Court his time in prison has been very productive. Mr. Vaughan is very close to his family. His desire is to simply return to his home in

---

[3] At the time of Mr. Vaughan's arrest he was not in possession of a firearm. However, the Government took the position Mr. Vaughan possessed a fire arm (Smith & Wesson MP40 handgun), from their interpretation of the vernacular in a text message allegedly between Mr. Vaughan and his co-defendant. The Government's allegations do not meet the facts; A handgun was recovered from Mr. Vaughan's co-defendant's apartment at 106 Somers Street inside one of the drawers of a two-drawer metal filing cabinet. Mr. Vaughan did not own the handgun, the apartment was not leased to Mr. Vaughan and as stated sub judice the hand gun was not in his possession. Further, Mr. Vaughan was not charged with being in possession of a firearm but with 21:846; 21:842(B||(A).

4

Brooklyn and take care of his family. His mother, Tamara Waite is receiving public assistance. His father Michael Vaughn passed away on December 24, 2008. Mr. Vaughan has a maternal brother who recently graduated high school and is now attending college at SUNY Morrisville.[4] As stated sub judice Mr. Vaughan has used his time while incarcerated productively. Specifically, Mr. Vaughan completed a chemical dependence program, a trauma sensitive program, and a Know Better, Live Better Program. See United States v. Shaquel Vaughan, 7:22-cr-00452(CS) ECF 91 ¶9. Moreover, records from the WCJ facility where Mr. Vaughan was being held corroborated that he worked from November 2022 to April 2023, and participated in the Solutions program. Id. ECF 91 ¶10. In addition, the Bureau of Prisons ("BOP") has classified Mr. Vuaghan as "First Step Act ("FSA") Eligible crediting him 50 days of Federal Time Credits ("FTC") as of May 20, 2024. Moreover, as of May 20, 2024, Mr. Vaughan has served 19.6% of his full term sentence and 23.0% of his statutory term. His projected release date is March 9, 2032.

## V. ADDITIONAL ASPECTS OF AMENDMENT 821

One aspect of the new Sentencing Guideline is the authority it gives district courts to consider unusually long sentences. The new amendment, according to the USSC, "agree[s] with the circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction but adopts a tailored approach that narrowly limits that principle in multiple ways.

---

4 Mr. Vaughan has acccepted responsibility for his criminal conduct and explained to probation that his motivation for selling drugs was influenced by financial pressures he experienced Id. ECF 91 ¶43.

First, it permits the consideration of such changes in cases involving "unusually long sentences," which the legislative history to the SRA expressively identified as a context in which sentence reduction authority is needed. See S. Rep. No. 98 225, at 55 (19 83), reprinted in 1984 U.S.C.C.A.N. 3182, 3238 39. ("The Committee believes that there may be unusual cases in which the eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and in some cases in which the Sentencing Guidelines for the offense of which the defender [sic] was convicted and later amended to prove a shorter term of imprisonment.")

Second, the change in law itself may be considered an extraordinary and compelling reason only where it would produce a gross disparity between the length of the sentence being served and the sentence likely to be imposed at the time the motion is filed.

Finally, to address administrative concerns raised by some commenters, the amendment limits the application of this provision to individuals who have served at least 10 years of the sentence the motion seeks to reduce. Commission data shows that between fiscal year 2013 and fiscal year 2022, fewer than 12 percent (11.5%) of all offenders were sentenced to a term of imprisonment of ten years or longer.

This Motion can be brought regardless of the offense of conviction, and whether or not the defendant received a mandatory minimum.[5]

---

[5] The USSC thus effectively throws into doubt the whole Mandatory Minimum construct, as it gives district court judges almost unlimited power to render new, (lower) sentences.

A district court recognized "that [c]ourts reviewing motions for sentence modifications have considered that the extent to which onerous lock downs and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences 'harsher and more punitive' that would otherwise have been the case.'" Unites States v. Hatcher, No. 18-cr-454-10(KPF), 2021 U.S. Dist. LEXIS 74760, 2021 WL 1545310, at *3 (S.D.N.Y. Apr. 19, 2021)(quoting United States v. Rodriguez, 492 F. Supp. 3d 206, 311 (S.D.N.Y. 2020)).

In short, this Court should conclude here individuals that were incarcerated during pandemic-induced conditions of confinement can constitute "extraordinary and compelling" circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic. Mr. Vaughan was arrested on January 11, 2022. He was in custody at the WCJ for about 21 months. The time Mr. Vaughan served includes hard time, in part, during the Covid-19 virus pandemic. "Vaughan reportedly contracted the Covid-19 virus three times including in July 2023 which caused body aches, loss of taste and smell, and changes in his breathing. See United States v. Shaquel Vaughan, 7:22-cr-00452(CS), ECF ¶80. The COVID-19 pandemic will always be controversial and divisive subject, and it is difficult to come across informed, neutral, and sober from either side of the aisle. However, it is impossible to deny the darker elements below the surface of what Mr. Vaughan had to endure; 14 day lock downs every month, being quarantined, one hour of recreation, isolation from other inmates, and no use of the phone alienating him from his family.

Here there can be no serious dispute that, Mr. Vaughan has experienced harsher and more punitive conditions of confinement that could have been anticipated by the sentencing court due to the many risk factors involved with

infection, and the Court would find that the length and totality of these conditions amount to extraordinary and compelling circumstances under 3582(c)(1)(A)(1).

The Court has authority to grant leniency based upon harsh jail conditions suffered during confinement. See USA v. Stubbs, 19 CR 276 (NSR)(ECF 68). Courts in the circuit have granted sentence reductions for harsh conditions See United States v. Sanchez-Reyes, 19 Cr. (DLC); United States v. McRae. 17 Cr. 643 (PAE); United States v. Guagliardo, 20 Cr. 23 (DLC); United States v. Henry, 19 Cr. 120 643 (PAE); United States v. Bryon, 19 Cr. 700 (VB); United States v. Marmolejos, 19 Cr. 626 (PAE); United States v. Nash, 20 Cr. 327 (VB). Here there can be no serious dispute that Mr. Vaughan has endured unusually harsher conditions of confinement during more than a year in custody during a pandemic. 20 CR 327(VB)(Sentence Transcript p.36). The Court should therefore proceed to consider whether such relief is warranted in this case in light of the factors set forth in 18 U.S.C. § 3553(a).

After the defendant has been sentenced, the judge, prosecutor, and defense attorney move on to their next case and soon he is forgotten. The defendant is left to a life of uncertainty to serve a sentence of loneliness, pain, indignity, danger, and hopelessness. The human faces of those forgotten souls reflect stories of marriages and relationships that fell apart -- or never happened. Love was lost or extinguished as family and friends move on with their lives.[6]

"And finally, that truth is great and will prevail if left to herself; that she is the proper and sufficient antagonist to error; and has nothing to fear from the conflict unless by human interposition disarmed of her natural weapons, free argument and debate; errors ceasing to be dangerous when it is permitted freely to contradict them." - Thomas Jefferson.

In Mr. Vaughan's case the truth is he made some bad mistakes. (See FN: 4, p. 5). Even though his intentions were not sinister and his methods unjustifiable he acknowledges these mistakes and has great remorse. There is a constant sentiment stressed among Mr. Vaughan's family and friends despite his crime, and that sentiment is, Mr. Vaughan is a kind and compassionate man who would help anyone. He has been the primary caretaker for his family and has always supported his mother and brother. Mr. Vaughan has helped friends, supported his family, and supported an "uncountable" number of people. Mr. Vaughan has a strong family support system to help him reintegrate into the community.

## CONCLUSION

Wherefore, Mr. Vaughan respectfully asks the Court to grant his petition for a two level reduction.

Respectively submitted,

*[signature]*

Shaquel Vaughan
Reg. No: 81289-509
P.O. Box 2000
Joint Base MDL, NJ 08640

## DECLARATION

I, hereby declare under penalties of perjury pursuant to 28 U.S.C. § 1746 that the above is true and correct to the best of my knowledge and belief.

Respectively,

*[signature]*

Shaquel Vaughan

---

6 As this Court is certainly aware, Long sentences are also immensely hard on prisoners and cruel to their families, as it's usually very difficult for a prisoner to re-integrate into his family and community after very long prison sentences." See Judge Alex Kozinski, Criminal Law 2.0 44 Geo. L.J. Ann. Rev. Crim. Pro. (2015) at page xii-xiii.

Certificate of Service

Pursuant to Section 1746 Title 28 of the United States Code, Petitioner Shaquel Vaughan, declares under penalty of perjury as follows; I am an inmate presently incarcerated at FCI Fort Dix, Joint Base MDL, NJ 08640. On June 24, 2024, I have deposited an envelope in the internal mail system at FCI Fort Dix first-class postage pre-paid by me containing the following document: Motion For Reduction Of Sentence Under 18 U.S.C. Section 3582(c)(2). The envelope deposited in the internal FCI Fort Dix mail system is addressed to the United States District Court for the Southern District Of New York, Charles L. Brieant, Jr. U.S., Courthouse, 300 Quarropas Street, White Plains, NY 10601-4150.

Respectfully submitted,

_____
Shaquel Vaughan
Reg. No. 81289-509

Application denied. Mr. Vaughan is not eligible for a sentence reduction under 18 U.S.C. § 3582(c) based on his having zero criminal history points, for at least two reasons. First, because the evidence clearly showed that he induced another to possess and transport a firearm, he is not qualified for the zero-criminal-history-point reduction pursuant to U.S.S.G. § 4C1.1(a)(7). Second, even if he were eligible for the reduction, that would only reduce his offense level from 37 to 35, and his Sentencing Guidelines range from 210-262 months to 168-210 months. Under U.S.S.G. § 1B1.10, a sentence cannot be reduced below the low end of the amended range, and because Mr. Vaughan's 144-month sentence is already below the low end, no further reduction is permitted. To the extent Mr. Vaughan moves under 18 U.S.C. § 3582(c)(1)(A), the motion is denied. He points to U.S.S.G. § 1B1.13(b)(6), which applies to unusually long sentences, but that provision does not apply because he has not yet served ten years. Further, a sentence 66 months below the low end of the Guideline range is hardly unusually long. Mr. Vaughan also points to harsh conditions in prison because of COVID, but I was aware of that factor at the time of sentencing. He has not presented extraordinary and compelling reasons for a sentence reduction. I therefore need not reach the § 3553(a) factors. The Clerk of Court is respectfully directed to send a copy of this endorsement to Mr. Vaughan.

SO ORDERED.

_____    7/3/24
CATHY SEIBEL, U.S.D.J.



TRENTON NJ
27 JUN 2024 PM

Shaquel Vaughan
81289-509
P.O. Box 2000
Joint Base MDL, NJ 08640

CLERK OF COURT
CHARLES L. BRIEANT JR. U.S. COURTHOUSE
300 Quarropas Street
White Plains, NY 10601-4150

RECEIVED
JUL 01 2024
U.S.D.C.
W.P.